# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ROBERT L. CHEN, M.D., and ACACIA DERMATOLOGY, PLLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 3:18-cv-00283 ) ) JUDGE CAMPBELL |
| BEVERLY ZAK, M.D., | ) MAGISTRATE JUDGE HOLMES ) |
| Defendant. | ) |

## MEMORANDUM

### I. Introduction

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 22). For the reasons set forth below, the Motion is **GRANTED,** in part, and **DENIED,** in part. Accordingly, Plaintiffs' claim under the Health Insurance Portability and Accountability Act is dismissed, and, in all other respects, the Motion is denied.

### II. Factual and Procedural Background

Plaintiffs Robert L. Chen, M.D. and Acacia Dermatology, PLLC, allege Dr. Chen's former spouse, Beverly Zak, M.D., has violated the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*, and the Health Insurance Portability and Accountability Act ("HIPPA"), 29 U.S.C. §§ 1181, *et seq.,* by making secret recordings in Dr. Chen's home and medical office. (Doc. No. 1). Plaintiffs allege the recordings include conversations involving Dr. Chen, his patients, and medical staff, and were made without their knowledge or permission. (Doc. No. 1).

The facts relevant to the issues raised by the parties are as follows.[1] Dr. Chen is the owner and principal shareholder of Acacia Dermatology, PLLC, located in Lawrenceburg, Tennessee. (Doc. No. 29 ¶ 17). In the summer of 2015, Dr. Chen discovered several electronic devices in the home he and Dr. Zak shared before their separation and divorce. (*Id.* ¶ 18). Dr. Chen was able to examine the contents of the recording devices in May 2016. (*Id.* ¶ 20).

In the first recording (Summarized at Doc. No. 22-3, at 2) ("Recording No. 1") at issue here, Dr. Chen is heard conversing with patients and staff, presumably at his medical office in Lawrenceburg, Tennessee. (*Id.*) Dr. Chen testified at his deposition that it appeared "the recording device was on my person, and I was moving along. I went from room to room, in the hallway, et cetera." (Doc. No. 29 ¶ 22). Dr. Chen speculated that somehow Dr. Zak activated the iPhone he carried in his breast pocket at work and recorded his conversation while he was walking around the clinic talking with patients and staff. (*Id.* ¶ 23). When asked how he thought the recording happened, Dr. Chen testified:

> The only explanation that makes sense, is that she was able to turn on my – either in some manner, and I don't want to speculate at this point, my voice and other peoples' voices were captured on the iPhone, which I kept in my breast pocket most of the time, if not, all the time during that period of time.
>
> And she was able to play the sound from my iPhone on a speaker device, which presumably could've been a cell phone of hers. And she then took the digital recorder up to that – at home in Nashville and recorded the goings on of what I was doing and all the conversations at that moment in Lawrenceburg.

(Doc. No. 22-1, at 29-30). When pressed as to how he thought the recording was made, Dr. Chen

---

[1] Plaintiffs responded to Defendant's Statement of Undisputed Material Facts (Doc. Nos. 24, 28), filed in support of her summary judgment motion, but Defendant has not responded to Plaintiffs' Additional Statement of Material Facts (Doc. No. 29). As Plaintiffs point out in their Sur-Reply brief (Doc. No. 42), their statements of fact, are therefore, "deemed undisputed for purposes of summary judgment." LR 56.01(f).

said:

> Well, I can't speculate on how it was done. I would love to know how it was done. So it's either, you know, butt dial [pocket dial], or she might have hacked into my phone and installed malware, which you can remotely turn on someone's microphone on their phone in an attempt to secretly record them.

(*Id.,* at 30-31).

In the second recording (Summarized at Doc. No. 22-3, at 3-4) ("Recording No. 2") at issue here, Dr. Zak is heard walking, talking to a baby, talking with an individual the parties identify as Carly Sisk, talking with Dr. Chen, and engaging in other activities and conversations. Carly Sisk was an employee of Acacia Dermatology and her office was inside the administrative office where the recording was made by Dr. Zak. (Doc. No. 29 ¶ 21). For a period of time during the recording, Ms. Sisk is heard giving biopsy results to two different patients, apparently after Dr. Zak has left the room. (*Id.*) Dr. Chen was not present during the conversations between Ms. Sisk and the patients. (Doc. No. 28 ¶ 14).[2]

Dr. Chen testified he learned sometime in 2010 that Dr. Zak purchased an iPhone Data Extractor, which is a type of hacking device. (Doc. No. 29 ¶ 25). Dr. Chen had a locking device on his iPhone to help prevent inadvertent "pocket dials" because his iPhone contained protected patient health information. (*Id.* ¶ 26). Dr. Chen has admitted that he has pocket dialed people before with his iPhone. (Doc. No. 28 ¶ 8).

---

[2] Although Plaintiffs brought this action based on Recording No. 1 and Recording No. 2, they now contend other separate recordings Dr. Zak admitted to during discovery also violate the Act. The Court finds it unnecessary to address these other recordings in resolving the pending motion as Defendant did not seek judgment on these recordings in her initial brief. The Court expresses no opinion on whether Plaintiffs may include these recordings as part of their claims at trial.

### III. Analysis

#### A. The Standards Governing Motions for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.* Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir. 2014). The court does not, however, make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat the motion, the nonmoving party must provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in its favor. *Celotex Corp.*, 477 U.S. at 324; *Shreve,* 743 F.3d at 132. Ultimately, the court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

#### B. HIPPA Claim

Defendant contends she is entitled to summary judgment on Plaintiffs' HIPPA claim because there is no private right of action under the Act. In their Response (Doc. No. 27), Plaintiffs

concede the point and request permission to dismiss that claim from the Complaint. The Court grants that request. Accordingly, the HIPPA claim is dismissed.

## C. <u>Federal Wiretap Act</u>

Defendant argues she is entitled to summary judgment regarding Recording No. 1 and Recording No. 2. With regard to Recording No. 1, which Defendant characterizes as "the Pocket Dial Recording," Defendant argues Dr. Chen lacked a "reasonable expectation of privacy" in the statements made in the recording.

The federal wiretapping statute makes it unlawful to "intentionally intercept[s], [or] endeavor[] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic mechanical, or other device." 18 U.S.C. § 2510(4). The Act also prohibits intentionally "disclosing" or "using" the contents of wire, oral, or electronic communication, "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. §§ 2511(1)(c), (d). Injured parties "whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" may bring an action for damages and other relief under the statute. 18 U.S.C. § 2520(a), (b).

The Act defines "oral communication" to mean "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). The Sixth Circuit has adopted a two-part test for applying this definition, which requires a court to consider: (1) whether a person exhibited an expectation of privacy and (2) whether that expectation was reasonable. *Huff v. Spaw*, 794 F.3d 543, 550 (6th Cir. 2015). The first condition, according to *Huff*, "requires more than an

5

internal belief in privacy . . . on must *exhibit* an intention to keep statements private." *Id.* (emphasis in original). "A person fails to exhibit an expectation of privacy . . . if he *exposes* those statements to the 'plain view' of outsiders . . . or if he fails to take steps to prevent exposure to third parties." *Id.* (emphasis in original). The "operative question" for the second part of the test – whether the expectation is reasonable – "is whether society is prepared to recognize an exhibited expectation as legitimate." *Id.*

In *Huff,* the plaintiffs, James and Bertha Huff, alleged the defendant violated the wiretap statute by listening to, and recording, conversations she overheard when Mr. Huff's cell phone inadvertently "pocket-dialed" the defendant's phone. The court determined that Mr. Huff failed to exhibit an expectation of privacy in the statements overheard by the defendant because he exposed his statements to her:

> At his deposition, James Huff admitted that he was aware of the risk of making inadvertent pocket-dial calls and had previously made such calls on his cellphone. A number of simple and well-known measures can prevent pocket-dials from occurring. These include locking the phone, setting up a passcode, and using one of many downloadable applications that prevent pocket-dials calls, *see, e.g.,* Will Verduzco, "Prevent Unwanted Butt Dialing with Smart Pocket Guard," *xdadevelopers,* Apr. 15, 2014, available at thttp://www.xda-developers.com/android/prevent-unwanted-buttdialing-with-smart-pocket-guard/ (reviewing a smartphone application designed to prevent pocket-dial calls from occurring) (last visited July 8, 2015). James Huff did not employ any of these measures. He is no different from the person who exposes in-home activities by leaving drapes open or a webcam on and therefore has not exhibited an expectation of privacy. *See Ganoe,* 538 F.3d at 1127. Having determined that James Huff failed to exhibit an expectation of privacy, we need not determine whether circumstances justified such an expectation to conclude that his statements do not qualify as oral communications and therefore cannot give rise to liability under Title III.
>
> * * *
>
> In sum, a person who knowingly operates a device that is capable of inadvertently exposing his conversations to third-party listeners and fails to take simple precautions to prevent such exposure does not have a reasonable expectation of privacy with respect to statements that are exposed to an outsider by the inadvertent operation of that device.

794 F.3d at 552. The court distinguished other means of interception: "James Huff retained an expectation of privacy from interception by non-pocket-dial means, such as by a hidden recording device or by someone covertly causing his cellphone to transmit his statements to an eavesdropper." *Id*., at 552 (footnote omitted).[3]

Defendant relies on *Huff* to support her argument that Recording No. 1 is not an "oral communication" under the Act because Dr. Chen did not have a reasonable expectation of privacy in the communication. To prove this recording was a "pocket dial recording," as in *Huff,* Defendant relies on the deposition testimony of Dr. Chen, in which he attempts to answer the question as to how he thought the recording was made. As set forth above, Dr. Chen suggests Dr. Zak somehow accessed the cell phone he kept in his pocket and recorded his conversations, either through hacking his phone or as a result of a pocket-dial ("butt dial").

This speculation falls short of the undisputed facts upon which summary judgment must rest. The undisputed facts the parties have presented here are that Dr. Chen discovered Recording No. 1, which contains Dr. Chen's conversations with patients and staff members and various other sounds in the background, at his home. (Doc. No. 22-3). Dr. Chen's speculation that a "pocket dial" is one way Dr. Zak might have obtained the recording does not establish that the recording was, in fact, obtained using this method. The parties have not filed an expert forensic report,[4] phone records (as in *Huff*), or any other evidence revealing the actual method Dr. Zak used to

---

[3] The court reached a different conclusion in evaluating his wife's claim: "Because Bertha Huff made statements in the privacy of her hotel room, was not responsible for exposing those statements to an outside audience, and was (until perhaps the final two minutes) unaware of the exposure, she exhibited an expectation of privacy." *Id.,* at 554.

[4] Defendant does not suggest that Dr. Chen is an expert in the area of intercepting and recording communications.

obtain the recording.[5] Consequently, Defendant has failed to establish she is entitled to summary judgment based on her "pocket dial" theory.

As for Recording No. 2, Defendant argues Dr. Chen lacks standing to pursue his claim because he did not participate in the portion of the intercepted conversation between Ms. Sisk and the two patients. In order to pursue a cause of action under the Act, Defendant contends, the plaintiff must be a "person whose . . . communication [was] intercepted . . ." 18 U.S.C. § 2520(a). As Plaintiffs point out, however, Dr. Chen's voice is heard in the background of the recording after Dr. Zak has left the room, and before Ms. Sisk starts making calls to the patients. (Doc. No. 22-3, at 3). Therefore, Defendant has not established she is entitled to summary judgment on her "lack of standing" argument.

Defendant argues that Acacia cannot recover under the Act because "Plaintiffs have not located any authority establishing that a company, rather than an individual, can pursue a claim under the Wiretap Act." (Doc. No. 23, at 12). The Act provides that any "person," who otherwise meets the requirements of the Act, may bring a private right of action. 18 U.S.C. § 2520(a). "Person" is defined under the Act to include "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). Defendant has not cited this authority, nor has she otherwise set forth any legal analysis of the issue. Thus, the request for summary judgment on this issue is denied. *See Murphy v. Lazarev,* 653 Fed. Appx 377, 378 (6th Cir. 2016) ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")

Defendant also argues she is entitled to summary judgment on Acacia's claims because

---

[5] Apparently, Dr. Zak does not recall how she made the recording.

Plaintiffs cannot establish Dr. Zak "intended" to record the conversations of "the company," and therefore, those recordings must have been "inadvertent." "Inadvertent" recordings, according to Defendant, are not actionable. Defendant bases this argument on an opinion expressed by Dr. Chen during his deposition that Dr. Zak was likely targeting him when she recorded conversations.

Dr. Chen's "belief" as to Dr. Zak's motivation, however, is not an undisputed material fact warranting summary judgment on the "intent" issue. Furthermore, Defendant has failed to point out Dr. Chen's testimony speculating that Dr. Zak may have wanted to target Ms. Sisk because she was the youngest staff member and very attractive. (Doc. No. 22-1, at 49-50). On this record, Defendant has not established she is entitled to summary judgment on her "lack of intent" theory.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' HIPPA claim is dismissed, and Defendant's motion for summary judgment is denied in all other respects.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE